**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CAVEO, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-cv-6200 |
| | ) | |
| CITIZENS INSURANCE COMPANY | ) | Judge Robert M. Dow, Jr. |
| OF AMERICA, INC. and HANOVER | ) | |
| INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

In this insurance coverage dispute, Plaintiff seeks to impose a duty to defend on Defendants with respect to a lawsuit filed against Plaintiff in state court. All parties have moved for summary judgment in this case. See [21] and [23]. As discussed at the February 4, 2016 hearing, the Court directed the parties to submit responses limited to the estoppel issue so that the Court could advance the litigation forward by addressing that threshold issue. For the reasons stated below, Plaintiff's motion is granted [21] and Defendants' motion [23] is denied solely with respect to the issue of whether Defendants are estopped from asserting policy defenses. The other pending motions [33], [37], and [50] are stricken without prejudice and with leave to refile. This case is set for further status hearing on October 13, 2016 at 9:30 am.

**I.  Background**

The Court takes the undisputed facts from the applicable policy provisions and the relevant admissions by the parties. In this insurance coverage dispute, Caveo LLC, ("Plaintiff"), seeks to impose a duty to defend on Citizens Insurance Company of America and Hanover Insurance Company ("Defendants") with respect to a state court lawsuit filed against Plaintiff by

Abreon that has since settled. Plaintiff, a consulting company and competitor of Abreon, was sued for a range of torts and civil statutory violations stemming from the alleged theft of copyrighted material and other confidential information by a former Abreon employee who later worked for Plaintiff. Hanover declined coverage, concluding that its policies either did not provide or expressly excluded coverage for the events at issue in the Abreon lawsuit.

In 2013, Caveo renewed its Avenues Business Owners Policy ("Policy") with Hanover. The Policy was issued to Caveo at its principal place of business in Cook County, Illinois. The Policy was effective from June 20, 2013 through June 20, 2014. Section II.A.1.a of the Policy provides that Hanover "will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'personal and advertising injury,' to which this insurance applies," and that Hanover "will have the right and duty to defend the insured against any 'suit' seeking those damages." [1] at ¶ 17. The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses: * * * (g) Infringing upon another's copyright, trade dress, or slogan in your 'advertisement.'" *Id.* at ¶ 18. In Section II.F.1, the Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters," providing that "[n]otices that are published include material placed on the internet or a similar electronic means of communication." [1] at ¶ 19.

Abreon filed the underlying lawsuit against Caveo on May 22, 2014. In its complaint, Abreon alleged that Caveo and Abreon are direct competitors in the consulting industry, including in training for enterprise resource planning software that an organization can use to collect, store, manage and interpret data. [1-1] at ¶¶ 2, 9–13. Abreon alleged that Caveo had

"engaged in a scheme and conspired with the Former Abreon Employees to have them work for Caveo and use Abreon's confidential, proprietary, trade secret and copyrighted material to compete with Abreon, interfere with its customer relationships and grow Caveo's competing business by capturing Abreon's business." *Id.*

Following the May 22, 2014 filing beginning the underlying litigation, Caveo tendered the litigation to Hanover on June 10, 2014. Hanover denied coverage for Caveo in connection with the Abreon Litigation in its letter of June 27, 2014. Hanover did not provide a defense to Caveo under a reservation of rights or seek declaratory judgment that there was no coverage. [15] at ¶ 1. Caveo now insists that Defendants are estopped from asserting policy defenses in this Court.

## II. Legal Standard

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Although intent and credibility are often critical issues in employment discrimination cases, no special summary judgment standard applies to such cases." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 532-33 (7th Cir. 2013). Rather as with any case, the Court "must construe all facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Id.* (citation omitted).

To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party

seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Ellis v. CCA of Tennessee LLC,* 650 F.3d 640, 646 (7th Cir. 2011) (quoting *Celotex Corp.,* 477 U.S. at 322). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In other words, the "mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

In view of the parties' agreement that Illinois law governs the insurance policies at issue, the Court will apply Illinois law in its analysis. See *Auto-Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009) ("Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." (internal citation and quotation marks omitted)). Specifically, the Court will "apply the law that [it] believe[s] the Supreme Court of Illinois would apply if the case were before that tribunal rather than before this court." *Help at Home, Inc. v. Med. Capital, LLC,* 260 F.3d 748, 753 (7th Cir. 2001). Under Illinois law, "[t]he construction of an insurance policy and a determination of the rights and obligations thereunder are questions of law for the court which are appropriate subjects for disposition by way of summary judgment." *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 620 N.E.2d 1073, 1079 (Ill. 1998).

### III. Analysis

The parties agree that this question of estoppel is governed by Illinois law. As the Seventh Circuit recently reiterated, where, as here, "an insurer tries to deny coverage *without* seeking a declaratory judgment *or* defending under a reservation of rights," the court "is limited to a review of the allegations in the underlying complaint" (*Landmark American Ins. Co. v. Hilger*, -- F.3d --, No. 15-2566, slip op. at 6 (7th Cir. Sept. 22, 2016) (applying Illinois law)), which the court must compare with the express language in the insurance policy to determine whether the insurer's duty to defend has been triggered. See *Pekin Ins. Co. v. Wilson,* 930 N.E. 2d 1011, 1016–1017 (Ill. 2010); *Am. States Ins. Co. v. Koloms*, 687 N.E. 2d 72, 75 (Ill. 1997). "Like any contract under Illinois law, an insurance policy is construed according to the plain and ordinary meaning of its unambiguous terms." *Schuchman v. State Auto Property & Casualty Ins. Co.*, 733 F.3d 231, 235 (7th Cir. 2013) (quotation marks and citation omitted). Furthermore, "[a] court must construe the policy as a whole and take into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract." *Id.* at 238. Finally, if, after undertaking the aforementioned analysis and employing the standard tools of textual interpretation, the Court determines that the terms of the policy are susceptible to more than one meaning, then they are considered ambiguous and will be construed strictly against the insurer who drafted the policy. *Id.*

Under Illinois law, "[i]f the facts alleged in the underlying complaint fall within, or potentially within, the policy's coverage, the insurer's duty to defend arises." *Pekin Ins. Co.*, 930 N.E. 2d at 1017. An insurer may justifiably refuse to defend the insured only if 'it is *clear* from the face of the underlying complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage.'" *Northfield Ins. Co. v. City of*

5

*Waukegan*, 701 F.3d 1124, 1129 (7th Cir. 2014) (quoting *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E. 2d 926, 930 (Ill. 1990).

Defendants argue that (1) the Policy only covers copyright infringement if it takes place in an "advertisement" as defined in the Policy and (2) the webinar cannot be considered an advertisement because it was not "widely disseminated." However, the Policy defines an "advertisement" as "a notice that is broadcast or published to the general public or specified market segment about your goods, products or services for the purpose of attracting customers or supporters." The Policy adds that "notices that are published include material placed on the internet or on similar electronic means of communication." According to the request for coverage, on or about April 8, 2014, Dan Fetherolf, a Caveo employee and a former employee of Abreon, led a webinar on the internet incorporating Abreon's copyrighted material. During the webinar, Fetherolf publicly used and disclosed some of Abreon's protected information including Abreon's marketing materials and slides. The webinar run by Fetherolf was "advertised on Caveo's website and was open to the public." Thus, Caveo used and disseminated Abreon's copyrighted material in business presentations that "were distributed to the public." Applying Illinois law, it is far from clear that Hanover did not have a duty to defend Plaintiff in the underlying Abreon litigation based on the allegations in the underlying complaint concerning the advertised webinar. See *Nat'l Casualty Co. v. McFatridge,* 604 F.3d 335, 338 (7th Cir. 2010); see also *Lemko Corp. v. Fed. Ins. Co.*, 70 F. Supp. 3d 905, 912 (N.D. Ill. 2014).

Defendants argue that the Caveo webinar does not fit the definition of an "advertisement" under the Policy—which requires "wide dissemination"—because the pleadings fail to "allege the number of persons who viewed the Caveo Webinar." [24] at 5. However, Defendants do not cite—nor could the Court find—a case holding that the pleadings in the underlying litigation

specifically must allege the number of persons who viewed an advertisement in order for it to fit the definition of an "advertisement" under such a policy. Defendants cite *Santa's Best Craft v. Zurich Am. Ins. Co.*, 941 N.E.2d 291 (Ill. App. Ct. 2010), in which the Illinois Appellate Court held that an in-person showing of prototype products to roughly 75 to 100 retailers was insufficient dissemination, but *Santa's Best* dealt with a factual determination *after* the insurer defended the case under a reservation of rights. *Id.* at 296. In *Santa's Best*, the insurer had agreed to defend the insured under a reservation of rights and, because of a conflict of interest, agreed to reimburse the insured for defense expenses. The litigation concerned the issue of indemnity coverage not whether the insurer had a duty to defend. *Id.* at 300. Here, based on the allegations of the underlying complaint, the case remained at least potentially within the scope of coverage, and that possibility could not be negated absent factual information that might have been obtained in discovery while Defendants honored their duty to provide a defense with a reservation of rights. If—but only if—those negating facts later became apparent, Defendants could then have sought a declaration that they did not owe a duty to defend (or indemnify).

Nor is the Court persuaded by Defendants' arguments that the professional services exclusion in the Policy precludes coverage. The Illinois Appellate Court recently rejected a similar argument in *Standard Mutual Insurance Co. v. Lay*, 2 N.E.3d 1253, 1259 (Ill. App. Ct. 2014). There, the insurer argued that an advertisement for a company providing professional services was itself a professional service. The Illinois Appellate Court did not accept the insurer's reasoning because (a) the insured was a "a real estate agency, not an advertising company" and (b) the claim was not made because the real estate agency incorrectly performed real estate services, but rather was based on the real estate agency's "tortious conduct ancillary to the performance of real estate services." *Id.* The Illinois court concluded that to hold otherwise

7

would "read the coverage of advertising injuries entirely out of the policies despite the fact that such coverage is specifically available under the policies." *Id.*; see also *Margulis v. BCS Ins. Co.,* 23 N.E.3d 472 (Ill. App. Ct. 2014); *Westport Ins. Corp. v. Jackson Nat. Life Ins. Co.*, 900 N.E.2d 377, 381 (Ill. App. Ct. 2008).

Like the policyholders in *Lay*, here Caveo is not an advertising company; it is a consulting company. Its solicitation of potential customers to purchase consulting services and its co-presenter's software therefore did not constitute the provision of a professional service. Defendants cite no allegation in the underlying lawsuit suggesting that Caveo performed consulting services for Caveo's clients during the webinar. "The mere offer to perform a professional service is not a professional service in its own right." *Westport Ins. Corp.*, 900 N.E.2d at 381. Accordingly, the Court does not construe the professional services exclusion as precluding coverage in the Abreon litigation.

Considering that Hanover owed a duty to defend, the Court concludes that Hanover is estopped from raising any policy defenses to coverage and thus forfeited its ability to control the Abreon Litigation and settlement. "In Illinois, estoppel is a penalty designed to induce insurers to protect clients who are at risk, rather than to sit idly while the underlying suit proceeds." *Am. Safety Cas. Ins. Co. v. City of Waukegan*, 678 F.3d 475, 486 (7th Cir. 2012). An insurer may not simply refuse to defend a case that is potentially covered by its policy with the insured. *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E. 2d 1122, 1134–35 (Ill. 1999). Instead, the insurer must do one of two things: "(1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage." When an insurer fails to do either and wrongfully denies coverage, the insurer "is estopped from raising policy defenses to coverage." *Id.* Given that the mere "possibility of coverage" triggers an insurer's duty to defend

its insured, Hanover had an obligation to defend Caveo in the Abreon litigation. See *Capitol Indem. Corp.*, 551 F. Supp. 2d at 718 (holding that the insured had a duty to defend under an "Advertising Injuries" provision in a policy after construing any and all ambiguities in favor of the insured); *Am. Econ. Ins. Co. v. Holabird & Root*, 886 N.E. 2d 1166, 1171 (Ill. App. Ct. 2008) ("As the threshold for pleading a duty to defend is low, any doubt with regard to such duty is to be resolved in favor of the insured.") By not providing a defense to Caveo under a reservation of rights or seeking declaratory judgment that there was no coverage, Hanover is now estopped from raising any policy defenses.

Once an insurer breached its duty to defend by wrongfully denying coverage, the insurer loses its ability to control the litigation and settlement, and the insured is free to make its own reasonable settlement. See *LaRotunda v. Royal Globe Ins. Co.*, 408 N.E.2d 928, 936 (Ill. App. Ct. 1980). "[A]n insured has a right to settle a claim that has been brought against it. In fact, the insured has a duty to settle reasonably and in good faith." *U.S. Gypsum Co. v. Admiral Ins. Co.*, 643 N.E.2d 1226, 1250 (Ill. App. Ct. 1994). The measure of damages for such a breach of the duty to defend is the amount of a reasonable settlement (even beyond policy limits) plus any expenses incurred. Although "[t]he reasonable settlement rule permits insureds left in the lurch by their insurers to recover from these insurers defense and settlement costs regardless of policy limits," *Caterpillar, Inc. v. Great Am. Ins. Co.*, 62 F.3d 955, 967 (7th Cir. 1995), that does not come into play here. It is undisputed that the coverage available for the Claim was $1 million per occurrence and $2 million in the aggregate, making the amount for which Caveo settled the Abreon litigation ($100,000) well below the Policy limits. Hanover does not dispute that the Abreon Litigation was settled or that it received a copy of the settlement agreement and the legal

9

invoices supporting the defense costs incurred by Caveo during the Abreon litigation. See [15] at ¶¶ 22, 37; see also *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004).

**IV. Conclusion**

For the foregoing reasons, Plaintiff's motion is granted [21] and Defendants' motion [23] is denied on the sole issue of whether Defendants are estopped from asserting policy defenses. The other pending motions [33], [37], and [50] are stricken without prejudice and with leave to refile. This case is set for a status hearing on October 13, 2016 at 9:30 am.

Dated: September 29, 2016

Robert M. Dow, Jr.
United States District Judge