# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CAVEO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 15-cv-6200 |
| | ) |
| CITIZENS INSURANCE COMPANY | ) Judge Robert M. Dow, Jr. |
| OF AMERICA, INC. and HANOVER | ) |
| INSURANCE COMPANY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

In this insurance coverage dispute, Plaintiff Caveo LLC seeks to impose a duty to defend on Defendants Citizens Insurance Company of America and Hanover Insurance Company with respect to a lawsuit filed against Plaintiff in state court. On September 29, 2016, the Court granted Plaintiff's motion for summary judgment [21] and denied Defendants' motion for summary judgment [23] solely with respect to the threshold issue of whether Defendants are estopped from asserting policy defenses. Currently before the Court is Defendants' motion for reconsideration of the Court's September 29, 2016 opinion [59]. For the reasons set forth below, the Court denies Defendants' motion for reconsideration [59]. This case is set for further status hearing on July 6, 2017 at 9:45 a.m.

**I.     Background**

The Court takes the undisputed facts from the applicable policy provisions and the relevant admissions by the parties. In this insurance coverage dispute, Plaintiff seeks to impose a duty to defend on Defendants with respect to a state court lawsuit filed against Plaintiff by Abreon that has since settled. Plaintiff, a consulting company and competitor of Abreon, was

sued for a range of torts and civil statutory violations stemming from the alleged theft of copyrighted material and other confidential information by a former Abreon employee who later worked for Plaintiff. Defendants declined coverage, concluding that their policies either did not provide or expressly excluded coverage for the events at issue in the underlying Abreon lawsuit.

In 2013, Plaintiff renewed its Avenues Business Owners Policy ("the Policy") with Defendants. The Policy was effective from June 20, 2013 through June 20, 2014. Section II.A.1.a of the Policy provides that Defendants "will pay those sums that the insured becomes legally obligated to pay as damages because of * * * 'personal and advertising injury,' to which this insurance applies," and that Defendants "will have the right and duty to defend the insured against any 'suit' seeking those damages." [1, at ¶ 17.] The Policy defines "personal and advertising injury" as "injury, including consequential 'bodily injury,' arising out of one or more of the following offenses: * * * (g) Infringing upon another's copyright, trade dress, or slogan in your 'advertisement.'" [*Id.*, at ¶ 18.] In Section II.F.1, the Policy defines "advertisement" as "a notice that is broadcast or published to the general public or specific market segment about your goods, products or services for the purpose of attracting customers or supporters," providing that "[n]otices that are published include material placed on the internet or a similar electronic means of communication." [1, at ¶ 19.]

The Policy also contains a professional services exclusion, which states in relevant part that the Policy does not apply to "'personal and advertising injury' arising out of the rendering of or failure to render any professional service * * * regardless of whether or not such service, advice or instruction is ordinary to any insured's profession. This includes but is not limited to * * * Management, Human Resources, Technology, Testing, Media or Public Relations consulting services[.]" [1-3, at 82.]

Abreon filed the underlying lawsuit against Plaintiff on May 22, 2014. In its complaint, Abreon alleged that Plaintiff and Abreon are direct competitors in the consulting industry, including in training for enterprise resource planning software that an organization can use to collect, store, manage and interpret data. [1-1, at ¶¶ 2, 9–13.] Abreon alleged that Plaintiff had "engaged in a scheme and conspired with the Former Abreon Employees to have them work for [Plaintiff] and use Abreon's confidential, proprietary, trade secret and copyrighted material to compete with Abreon, interfere with its customer relationships and grow [Plaintiff's] competing business by capturing Abreon's business." [*Id.*]

Following the May 22, 2014 filing beginning the underlying litigation, Plaintiff tendered the litigation to Defendants on June 10, 2014. In a June 27, 2014 letter, Defendants denied coverage for Plaintiff in connection with the Abreon Litigation. Defendants did not provide a defense to Plaintiff under a reservation of rights or seek declaratory judgment that there was no coverage. [15, at ¶ 1.] On July 15, 2015, Plaintiff filed this suit, seeking a declaratory judgment (Count I), and alleging breach of contract (Count II) and a violation of 215 ILCS 5/155 (Count III). [1.] Both parties moved for summary judgment, [21, 23], and this Court granted summary judgment for Plaintiff, solely with respect to the threshold issue of whether Defendants are estopped from asserting policy defenses. [56.] Defendants now move for reconsideration. [59.]

**II.     Legal Standard**

There has not yet been a final judgment in this case, thus Rule 54(b) governs Defendants' motion for reconsideration. Under Rule 54(b), "any order or other decision [ ] that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a

judgment adjudicating all the claims and all the parties' rights and liabilities."[1] Fed. R. Civ. P. 54(b); see also *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir.), opinion amended on denial of reh'g, 835 F.2d 710 (7th Cir. 1987) (affirming district court's denial of motion to reconsider under Rule 54(b)).

Revisions under Rule 54(b) are discouraged and should be reserved for circumstances in which the initial decision was "clearly erroneous and would work a manifest injustice." See *Ghashiyah v. Frank*, 2008 WL 680203, at *3 (E.D. Wis. Mar. 10, 2008) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)) (internal quotation marks omitted). In general, "litigants must fight an uphill battle in order to prevail on a motion for reconsideration." *Id.* (citation and internal quotation marks omitted).

Motions to reconsider under Rule 54(b) "are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Ghashiyah*, 2008 WL 680203, at *3. The Court may a grant Rule 59(e) motion to alter or amend the judgment if the movant presents newly discovered evidence that was not available at the time of trial, points to evidence in the record that clearly establishes a manifest error of law or fact, or if the Court previously misunderstood a party's arguments. *Miller v. Safeco Ins. Co. of Am.*, 683 F.3d 805, 813 (7th Cir. 2012); *United States v. Ligas*, 549 F.3d 497, 501 (7th Cir. 2008). Rule 59(e) "enables the court to correct its own errors and thus avoid unnecessary appellate procedures." *Miller*, 683 F.3d at

---

[1] Rule 54(b) states:

> When an action presents more than one claim for relief * * * or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay. Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).

813 (citation and internal quotation marks omitted). Rule 59(e) motions are "not appropriately used to advance arguments or theories that could and should have been made before the district court rendered a judgment, or to present evidence that was available earlier." *Id.* (citation and internal quotation marks omitted). Additionally, "'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F.Supp. 1063, 1069 (N.D. Ill. 1997)).

## III.   Analysis

In its summary judgment opinion, this Court concluded that Defendants had a duty to defend because (1) the alleged copyright infringement in Plaintiff's webinar took place in an "advertisement," and thus was covered as a "personal and advertising injury; and (2) the professional services exclusion does not apply because Plaintiff's solicitation of potential customers to purchase consulting services and its co-presenter's software did not constitute the provision of a professional service. [56, at 6–8.] Defendants seek reconsideration solely with respect to the application of the professional services exclusion, arguing that "the Court has misapprehended critical facts and law" in determining that this exclusion does not apply.

First, Defendants argues that the Court erred in not acknowledging the decision in *Landmark Am. Ins. Co. v. NIP Group, Inc.*, 962 N.E.2d 562 (Ill. App. Ct. 2011), and argues that the holding of *Landmark* contradicts this Court's conclusion that the professional services exclusion does not apply to the case at hand. This argument fails for several reasons. First, Defendants already raised this *Landmark* argument in their summary judgment briefing. [See 46 (Defendants' Response Brief), at 8 (citing *Landmark, Inc.*, 962 N.E.2d 573–76 for the proposition that an advertisement for insurance products can also be a professional service); 49

5

(Defendants' Reply Brief), at 4 (citing *Landmark*, 962 N.E.2d 574 to support Defendants argument that an advertisement can constitute a professional service under certain circumstances).] The Court previously rejected this professional services argument, stating "Nor is the Court persuaded by Defendants' arguments that the professional services exclusion in the Policy precludes coverage." [56, at 7]; see also *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996) ("Reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion."). Although the Court did not explicitly address the *Landmark* decision, there is no requirement that the Court must discuss every case cited by the parties. See *Johnson v. Strasser*, 449 F. App'x 523, 524 (7th Cir. 2011) ("judges need not discuss in their decisions every case a party cites"); *Schiffner v. Motorola, Inc.*, 297 Ill. App. 3d 1099, 1106, 697 N.E.2d 868, 874 (1998) ("This court is not aware of any requirement that its decisions must include or discuss each and every case cited as authority by a party[.]").

Additionally, even if this were a proper argument for a reconsideration motion, it would fail on the merits, as *Landmark* is readily distinguishable from the case at hand. In *Landmark*, the policy at issue was a "miscellaneous professional liability" insurance policy that provided coverage for claims "arising out of * * * Advertising Liability * * * in the rendering or failure to render professional services[.]" 932 N.E.2d at 573. The underlying lawsuit was based on the insured's alleged practice of sending unsolicited advertisements for its insurance services and products in violation of privacy rights. *Id.* The trial court held that the insured's practice of advertising its products could never be construed as a professional service triggering coverage under the policy because such advertising is not an activity inherent to the insured's business. *Id.* at 573–74. The Illinois Appellate Court disagreed with this broad interpretation and held that the

6

policy "at least potentially covers the allegations contained in [the] underlying complaint," and thus the insurer had a duty to defend. *Id.* at 576.

In contrast, the case at hand involves a professional services *exclusion*, as opposed to the scope of coverage under a professional liability insurance policy, which alters the lens through which the Court must read the policy and the underlying complaint. The Court "must read the underlying complaint liberally and in favor of the insured." *Hurst-Rosche Engineers, Inc. v. Comm. Union Ins. Co.*, 51 F.3d 1336, 1342 (7th Cir. 1995) (citation and internal quotation marks omitted); see also *U.S. Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991). "The burden of proving that a claim falls within an exclusion rests squarely on the insurer, because (1) the insured's intent in purchasing an insurance policy is to obtain coverage, therefore any ambiguity jeopardizing such coverage should be construed consistent with the insured's intent, and (2) the insurer is the drafter of the policy and could have drafted the ambiguous provision to be clear and specific." *Hurst-Rosche Engineers*, 51 F.3d at 1342; see also *Econ. Fire & Cas. Co. v. Kubik By & Through Kubik*, 492 N.E.2d 504, 507 (Ill. App. Ct. 1986). "Where an insurer denies a duty to defend based on an exclusionary clause within a policy, its application must be clear and free from doubt." *Hurst-Rosche Engineers*, 51 F.3d at 1342 (citation and internal quotation marks omitted); see also *Ins. Co. of Illinois v. Markogiannakis*, 544 N.E.2d 1082, 1094 (Ill. App. Ct. 1989). "Any ambiguities within the policy must be construed in favor of the insured." *Hurst-Rosche Engineers*, 51 F.3d at 1342; see also *Wilkin Insulation Co.*, 578 N.E.2d at 930.

Thus, the *Landmark* Court construed the professional liability insurance policy in favor of the insured and concluded that the advertisement at was at least potentially a professional service such that the insurer had a duty to defend. 932 N.E.2d at 576. Here, construing the

complaint and policy in favor of the insured Plaintiff, as required, the Court concludes that Defendants have not carried their burden in proving that the professional services exclusion applies "clear and free from doubt." See *Standard Mutual Insurance Co. v. Lay*, 2 N.E.3d 1253, 1259 (Ill. App. Ct. 2014) (holding that the professional services exclusion did not apply to underlying lawsuit based on insured's "blast fax" advertising his real estate business); see also *Margulis v. BCS Ins. Co.,* 23 N.E.3d 472, 480 (Ill. App. Ct. 2014) (professional liability insurance policy did not cover claims based on insured's unauthorized telephone solicitations); *Westport Ins. Corp. v. Jackson Nat. Life Ins. Co.*, 900 N.E.2d 377, 381 (Ill. App. Ct. 2008) (professional liability insurance policy did not cover claims based on insured's unsolicited faxed advertisements).

Defendants' second argument is that the policy language "directly contradicts the assertion that 'advertisements' can never be 'professional services.'" [59, at 4.] There are multiple problems with this argument as well. First of all, the Court did not hold in its summary judgment opinion that advertisements can *never* be professional services; rather, the Court held that the professional services exclusion at issue did not apply in view of the specific facts of this case. Defendants focus on the policy language stating that the professional services exclusion applies "regardless of whether or not such service, advice or instruction is *ordinary to* any insured's profession." [59, at 4, (quoting 1-3, at 82) (emphasis added).] Defendants argue that even if webinars are not "ordinary" to Plaintiff's profession, webinars can constitute a professional service as long as they involve specialized knowledge. Although Defendants quoted this policy language in their summary judgment briefing, [see 46, at 6], Defendants did not previously advance an argument based specifically on the "ordinary to" language, and "a motion for reconsideration is an improper vehicle to * * * tender new legal theories." *Bally Exp.*

8

*Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986). Further, the Court did not reject the application of the professional services exclusion on the ground that the webinar was a professional service that Plaintiff did not ordinarily provide; rather the Court concluded that the webinar was a "solicitation of potential customers to purchase consulting services * * * and therefore did not constitute the provision of a professional service." [56, at 8.]

Additionally, Defendants criticize the Court's summary judgment opinion for not addressing the policy language stating that professional services include but are not limited to "Management, Human Resources, Technology, Testing, Media or Public Relations consulting services[.]" [59, at 4, (quoting 1-3, at 82).] Defendants argue that the webinar provided instructions to clients and potential clients regarding employee training programs, and thus provided a human resources consulting service. This argument also misses the mark, and in fact advances a slight variation on an argument that the Court previously rejected. Specifically, Defendants argued in their summary judgment briefing that "[t]he Abreon Protected Information allegedly misappropriated by [Plaintiff] was described in [Abreon's] Motion for Preliminary Injunction as relating to Abreon's specialty in 'organizational, process, technology change, and education aimed at helping improve the experience that drives employee behavior.' Such activities clearly constitute 'Human Resource' services[.]" [46, at 7; see also 24, at 6 ("The Caveo Webinar was clearly the rendering of a professional service and related to human resources technology, *i.e.*, consulting clients and potential clients on "ERP training.").] In concluding that Plaintiff did not perform consulting services during the webinar, the Court rejected this line of argument.

Next, Defendants argue that the professional services exclusion applies to "personal and advertising injury" and that the definition of "personal and advertising injury" includes two

9

offenses that take place in an advertisement: "the use of another's advertising idea in your 'advertisement'" and "infringing upon another's copyright, trade dress or slogan in your 'advertisement.'" [1-3, at 92.] Defendants argue that "the Court's interpretation would mean that the professional services exclusion could never apply to two out of the seven offenses enumerated in the definition of "personal and advertising injury." Defendants not raise this argument in their summary judgment briefing, and "a motion for reconsideration is an improper vehicle to * * * tender new legal theories." *Bally Exp. Corp.*, 804 F.2d at 404. Again, however, if the Court were to consider this argument, it would fail on the merits because, as explained above, the Court did not hold that advertisements can *never* be professional services. Further, Defendants do not even attempt to explain why the professional services exclusion must be applicable to each and every one of the seven offenses enumerated in the definition of "personal and advertising injury."

In their motion for reconsideration, Defendants continue to insist that the presentation of the webinar required specialized knowledge and was not simply a sales pitch for potential clients. Defendants argue that the webinar was an attempt to teach clients and potential clients specialized and technical means of incorporating ERP training into a business. According to Defendants, the webinar was not merely a description of the general features of Plaintiff's products and services, but rather employed specific expertise to help clients and potential clients incorporate strategic learning and performance solutions in their businesses. However, Defendants already advanced this argument at the summary judgment stage. [See 24, at 6–7 ("An examination of the Caveo Webinar reveals that the topics in the Caveo Webinar clearly involved the discussion of technical and specialized topics, involved specialized knowledge, labor and skill, and was predominantly mental or intellectual in nature."); 46, at 6 ("The slides of

the Caveo Webinar demonstrate highly technical concepts related to ERP training that require specialized knowledge, labor, and skill."); 49, at 4 ("[T]he Caveo Webinar was not 'merely an overture to potential customers,' but was a teaching activity that required specialized knowledge and skill.").] Again, "[r]econsideration is not an appropriate forum for rehashing previously rejected arguments[.]" *Caisse Nationale de Credit*, 90 F.3d at 1270.

In any event, although some specialized knowledge may have been required for Plaintiff to create the webinar, this is not enough to invoke the professional services exclusion. Professional service providers will generally use their knowledge of their businesses to create advertisements. To the extent that the webinar was offering advice to clients and potential clients, providing free advice in this general manner to a general audience does not constitute providing professional services. See *Margulis*, 23 N.E.3d at 480 (rejecting defendant's argument that unsolicited telephone calls were a professional service because they provided information that would be useful to insurance clients, and holding that the insured was not rendering professional services where there was no "established business relationship" between the insured and the call recipients, who were "*not* insurance clients" of the insured); *Lipscomb Ins. Grp. v. Hartford Lloyds Ins. Co.*, 2010 WL 11475236, at *7 (N.D. Tex. Nov. 29, 2010) (explaining that "[w]hile 'advising' constitutes a professional activity under the Policy, that does not necessarily mean that advice sent in a general manner to non-clients and prospective customers constitutes the rendering of a service," and noting that "no court has held the [professional services] exclusion applicable to activities directed at non-customer, non-client third-parties"); *Atlantic Lloyd's Ins. Co. of Texas v. Susman Godrey, LLP*, 982 S.W.2d 472, 477 (Tex. App. 1998) (concluding that a law firm's solicitation letter did not provide professional services where the letter "offered no legal opinion with respect to the patient's particular case"). Thus, Defendants

have not met their burden in proving that the professional services exclusion applies here, "clear and free from doubt." *Hurst-Rosche Engineers*, 51 F.3d at 1342. At most, it is ambiguous, in which case the Court must construe the policy in favor of the insured (here, Plaintiff). *Id.*

Finally, Defendants again attempt to distinguish *Lay*, 2 N.E.3d at 1253, *Margulis,* 23 N.E.3d at 472, and *Westport*, 900 N.E.2d at 377, arguing that Plaintiff's webinar involved specialized knowledge, whereas the advertisements at issue in *Lay*, *Margulis*, and *Westport* did not. However, Defendants made this same argument in their summary judgment briefing. [See 49, at 3–5 (arguing that "every decision cited by [Plaintiff] involved the transmission of an unsolicited facsimile advertisement or an unsolicited marketing telephone call" and attempting to distinguish *Westport*, *Lay*, and *Margulis*).] Thus, the Court already rejected this argument, and it is inappropriate for Defendants to advance the same argument in a motion for reconsideration. See *Caraker v. Sandoz Pharm. Corp.*, 172 F. Supp. 2d 1018, 1027 (S.D. Ill. 2001) (explaining that simply rehashing a previously rejected argument "is exactly what *not* to do in a motion to reconsider"); *Fisher v. Samuels*, 691 F. Supp. 63, 74 (N.D. Ill. 1988) (explaining that it is inappropriate to use a motion for reconsideration to advance an argument that the court has already rejected).[2]

---

[2] Defendants also argue that the Court noted in its summary judgment opinion that the webinar was "advertised on Caveo's website." Defendants contend that the Court "presumably considered this advertisement in evaluating the professional services exclusion." [59, at 9.] This argument is a nonstarter because Defendants' take this quote out of context. The Court was not discussing the professional services exclusion when noting that the webinar was "advertised on Caveo's website and open to the public;" rather, the Court was explaining why it was rejecting Defendants' argument that the webinar cannot be considered an advertisement because it was not widely disseminated. [See 56, at 6.]

**IV.     Conclusion**

For the foregoing reasons, the Court denies Defendants' motion for reconsideration [59].

This case is set for further status hearing on July 6, 2017 at 9:45 .am.


Dated: June 21, 2017

_____
Robert M. Dow, Jr.
United States District Judge